Curia, per

Butler, J.
This case presents some questions of intricacy, rather from the confusion with which the parties have made their contract, than from any difficulty in prohouncing on the justice and legal character of the principles involved. Policies of insurance are made on the confidence that the contracts under them will be observed and kept in good faith by all the parties connected with them; and they should be freely and liberally construed by Courts to effect the intention of the parties; when the risk occurs which is covered by the policy, the underwriter should promptly indemnify the assured, without evasion or complaint. On the other side, the policy should always be obtained on fair representation, and the risk should not be subsequently increased by fraud and misrepresentation. The finding of the jury in this case convicts Neve of a fraud, and is a censure on the company for insisting on the preliminary proof, so far as Kohnke is concerned; one may be just, but I think the *247 other is not; I thought at the circuit, and am still inclined to the same opinion, that the defendant had a right to insist at the trial on the production of the preliminary proof, as a condition precedent to the plaintiff’s recovery. A majority of the Court think, however, that the proof was waived by the company when demand was made for payment of the policy, and they therefore sustained the finding of the jury on this point. It is always in the power of the underwriter to insist on the evidence alluded to, at the time the policy is presented for payment; and when it cannot be produced by the assured, it would be strong evidence that the risk had not been the result of accident. At any rate, having contracted with the underwriters, that a stranger would do some act to entitle the assured to recover, the stipulation, however unreasonable, must be complied with; I do not think myself that such a stipulation is unreasonable. It is founded in prudence, and should not be dispensed with on the part of the underwriter, when there is good ground to believe that the risk has been brought about by fraud and criminal design. The defendants in this case may have forborne to demand the preliminary proof, under some apprehension that if it had been produced, it might have prejudiced their case on the trial of the main issue. I do not think that any intention of a waiver on their part. But their conduct may have deceived others, who might have been able at the time to comply with a specific regulation, if it had been made. And as they did not make the requisition at the time, it is perhaps right. This point must therefore be regarded as ruled against the defendants by the verdict of the jury.-
All the other grounds resolve themselves into this question. Had Kohnke, at the time the policy was executed, or afterwards, any interest in it that can be recognized and protected in a Court of law 1 And if so, was it such an interest as could not be destroyed by the hand of Neve'? Which involves the further question, had Neve any interest at all in the policy after it was transferred to Kohnke by delivery; retaining no right in himself'? It.is certain that by the terms of the policy Kohnke had no legal interest in it that could be enforced in his own name. The policy is taken in Neve’s name on property of which he *248 had the legal title. The premium on two thousand dollars for property valued at three thousand, at the rate of two and a half per cent, was paid by him. In placing it in possession of Kohnke, by the consent of the underwriters, to “assure” Kohnke, as it is expressed, he gave Kohnke thereby only an equitable interest. Such, however, as a Court of law will recognize for the purpose of doing justice in a strictly legal proceeding in the name of the assured. Had the policy been assigned in the most solemn form, it would not have given Kohnke a legal right to sue in his own name, or to insist on any legal right. In such case he would have had no more than an equitable interest. As a depository, he has the same interest, if the policy was delivered to him before the risk happened, of which there could be no serious doubt. Whatever his interest was, though equitable, we think was acquired bona fide by the consent of the company. They knew the circumstances under which the stock of goods was insured; that they were in the actual possession of Neve, while the other had a general lien on them. And the company undertook to protect this general lien by letting the policy go into the possession of Kohnke as his assurance; and they could not deprive him of the benefit of this security without fault on his part. If it had been otherwise, perhaps, the risk would not have happened, as it may have increased Neve’s interest to procure another policy, and diminished his diligence in taking care of the goods in his store. The vigilance of self interest is the eye of prudence; and when that is weakened, the underwriters of a policy increase the danger of their liability. They must do what they intended for Kohnke, and cannot let his rights suffer by the wrongful acts of Neve. We think, therefore, that as this action was in fact for Kohnke’s benefit, he was entitled to be indemnified to the extent of his injury. According to this view, it will appear that Kohnke had not an absolute, exclusive and indefeasible interest in the policy; but that as an additional security to his confession of judgment it was contingent, collateral and cumulative. In no event was it worth to him more than $1000, whilst it might have been worth to Neve $2000. Could it be questioned that Neve had it in his power to redeem this *249 security, and to acquire a perfect right to it by satisfying the judgment'? Suppose he had paid off the judgment in two days after it was confessed, would the underwriters of the policy have been entirely discharged 1 Such a pre-tence, on their part, would have been inconsistent with common sense, and their undoubted intention at the origin of their contract. They never could have supposed that they had improved their condition, when they consented that Kohnke should be assured or have an assignment of the policy. They always regarded themselves as liable for $2000, provided goods to that amount should be destroyed accidentally by fire. The fact of suffering two parties to be interested in the same policy, could not diminish their liability. As an action on a policy of insurance is one of indemnity, no party can recover beyond his loss ; and if but twenty dollars worth of goods only had been destroyed by the fire, no party could have recovered beyond that amount; and for the like reason, should no party be allowed to recover beyond his actual interest. The jury, therefore, properly restricted the recovery of the plaintiff in this case, to Kohnke’s loss, notwithstanding goods to a larger amount may have been destroyed; for Neve, by his own unfail dealing, subsequently deprived himself of any right to avail himself of any interest under this policy as it contains the common clause, that if any subsequent policy should be obtained on the same stock of goods, without notice, this policy should be void. As it will appear, in another case, a second policy was obtained without notice, and for that reason it is right that Neve should forfeit his rights under this by his own fraud. It is said, however, that Neve having parted with all right to this policy, he had no interest in it; and therefore, he was at perfect liberty to procure another without notice. That suggests a recurrence to the question, what interest had Kohnke in this policy'? I have before said that he had the defeasible interest of a surety — and I think that this view is fully supported by the final judgment in the case of Robert vs. The Traders Insurance Company, 9 Wendall, 404, 474; 17 Wendall, 631. In that case Robert had procured policies of insurance on certain buildings, which were mortgaged to one Bolton. The policies, by the consent of the com *250 pany, were assigned to Bolton. After the houses were burnt, Bolton, in the nameof Robert, recovered judgment on his policies ; this judgment was paid off by and assigned to Robert —who thereby claimed all therights intended for him under the original policy, and it was decided that his right to the policy was restored so soon as he removed the mortgage, or paid the judgment rendered on its foreclosure. The case was elaborately considered and carried through all the Courts of New York. See it as reported in 17 Wendall, 631. Senator Edwards delivered the final jndgment in the Court of Errors. Speaking of this question, he says: “Let us then in the next place inquire how far the rights of the parties were affected by the assignment. Thomas Robert owed Francis Bolton a debt of $5500, secured by his bond and mortgage on the buildings in question, <fec. He owned three policies of insurance, in each of which it was stipulated that the interest of the assured was not assignable without the consent of the company manifested in writing. That right being obtained, (fee., the policies were assigned to Bolton, as collateral security for the payment of his mortgage. Did the fact, that they were so assigned, give Bolton the absolute indefeasible interest in the policies, or only a collateral interest for the time being! I am of opinion that he had only a collateral interest, liable to be divested whenever Robert paid the mortgage; and when the company consented to the assignment, they consented to it for the purposes for which it was made, and this consent gave him the right then; but this could not alter or diminish the extent of the liability of the Company.” This case does go so far as to say that after Robert had made his assignment, he could take another policy on his interest as mortgagor without notice of the policy assigned. I suppose that was on the ground that he could act bona fide in taking a subsequent policy whilst the right under the assignment subsisted. Whether I could sanction, by my judgment,, this part of the case, I am not called on to determine. For the right of recovery on the different policies, ■ would depend on the interest at the trial — and the second policy might be worth little or nothing, if there could have been a full recovery on the first. The point I wish to present, *251 is that the first policy was not absolutely vested in the as-signee Kohnke — and all that could be recovered on it was Kohnke’s interest, when Neve had forfeited his right under it. Had Kohnke held the policy under an assignment made cotemporaneously with its execution, as his only security, then he would have been entitled to recover the whole amount, provided the goods destroyed were not of less value than that amount at the time of the fire. In Hambleton vs. Mead, 2 Burr. 1210, L. Mansfield said — “ the plaintiff’s demand was for an indemnity; his action then must be founded on the nature of the damnification, as it really is at the time of the action brought.” The recovery of Kohnke might have been less than the $1,000, but could not have been more. This shews that he had not the entire interest in the policy; and if the whole amount could have been recovered, it would have been as much for the benefit of Neve as Kohnke — the one having a legal and the other an equitable interest. Neve’s right became extinguished by his taking another policy without notice of the existence of the first. In attempting to procure two policies, he forfeited, by the terms of the policies themselves, his right to recover on either, as will be seen when the case of the Columbia Company comes to be considered. We think the jury have hit the justice of the case, and therefore refuse this motion to set aside their verdict.
Richardson, O’Neall, Evans, Butler and Wardlaw Justices, concurred.